UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

IMANI L.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

**DECISION AND ORDER**

1:20-cv-00774-EAW

**INTRODUCTION**

Represented by counsel, Plaintiff Imani L. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for supplemental security income benefits ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 10; Dkt. 12). For the reasons discussed below, Plaintiff's motion (Dkt. 10) is denied and the Commissioner's motion (Dkt. 12) is granted.

## BACKGROUND

Plaintiff protectively filed her application for SSI on January 24, 2017. (Dkt. 9-3 at 2; Dkt. 9-5 at 2 ).[1] In her application, Plaintiff alleged disability beginning April 30, 2007. (Dkt. 9-3 at 3-4). Plaintiff's application was initially denied on April 17, 2017. (*Id*. at 3-10). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Mary Mattimore on March 11, 2019. (Dkt. 9-2 at 33-61). On March 27, 2019, the ALJ issued an unfavorable decision. (*Id*. at 16-26). Plaintiff then requested review by the Appeals Council, which the Council denied on April 22, 2020, making the ALJ's determination the final decision of the Commissioner. (*Id.* at 2-7).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

(quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.920(d). If the impairment meets or medically

equals the criteria of a Listing and meets the durational requirement (*id*. § 416.929), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 416.920(e). The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

### I. The ALJ's Decision

In deciding whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation analysis set forth in 20 C.F.R. § 416.920 and determined that Plaintiff had not engaged in substantial gainful work activity since January 21, 2017, the application date. (Dkt. 9-2 at 18).

At step two, the ALJ found that Plaintiff suffered from several severe impairments: learning disability, rule out specific learning disorder, leaning disorder abstract symbolic comprehension and applied reasoning, persistent depressive disorder with anxious distress,

and anxiety disorder. (*Id.*). The ALJ also determined that Plaintiff's mild mitral valve regurgitation, psychophysiological insomnia, and intermittent asthma were non-severe impairments. (*Id*. at 19).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id*. at 19-21). Before proceeding to step four, the ALJ concluded that Plaintiff retained the RFC to perform the full range of work at all exertional levels, except that she could perform a low stress job defined as simple routine work, make simple workplace decisions, have no supervisory responsibility, independent decision-making, or work at a job with strict production quotas, but could maintain attention and concentration for 2-hour blocks of time, tolerate minimal changes in workplace processes and settings, and tolerate occasional interaction with supervisors, coworkers and the public. (*Id*. at 21-22).

At step four, the ALJ found that Plaintiff had no past relevant work. (*Id.* at 25). At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the occupations of kitchen helper, laundry worker, and cook helper. (*Id.* at 26). Accordingly, the ALJ found that Plaintiff was not disabled from the date of her application through the date of the ALJ's decision. (*Id.*).

## II. <u>The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error</u>

Plaintiff asks this Court to reverse, or, in the alternative, remand this matter to the Commissioner for further proceedings because the ALJ improperly relied on the stale opinion of a consultative examiner to formulate Plaintiff's mental RFC that did not take into account the fluctuating nature of her mental functioning and medication adjustments that took place after the opinion was rendered. (Dkt. 10-1 at 10-14). Specifically, Plaintiff takes issue with the ALJ's reliance on the opinion of consultative examiner Janine Ippolito, Psy. D. ("Dr. Ippolito") arguing that the opinion was stale because it predated the worsening of her mental health symptoms evidenced by the change of her psychotropic medication. (*Id*. at 12-14; Dkt. 13 at 2-4). For the reasons discussed below, the Court finds Plaintiff's argument unavailing.

Generally, a stale medical opinion does not constitute substantial evidence that an ALJ can rely on in making a disability determination. *See Camille v. Colvin*, 104 F. Supp. 3d 329, 343-44 (W.D.N.Y. 2015), *aff'd*, 652 F. App'x 25 (2d Cir. 2016) (internal citation omitted). However, the mere passage of time does not render an opinion stale unless it fails to recognize evidence of substantial deterioration of a claimant's condition. *See Cruz v. Comm'r of Soc. Sec*., No. 1:16-CV-00965(MAT), 2018 WL 3628253, *6 (W.D.N.Y. July 31, 2018) ("A consultative examination is not stale simply because time has passed, in the absence of evidence of a meaningful chan[ge] in the claimant's condition."); *Andrews v. Berryhill*, No. 17-CV-6368 (MAT), 2018 WL 2088064, at *3 (W.D.N.Y. May 4, 2018) (finding that ALJ did not err by relying on older opinions where no evidence of

significant deterioration in the plaintiff's condition was demonstrated). Accordingly, an older opinion may constitute substantial evidence if the ALJ finds it to be consistent with the record. *See Biro v. Comm'r of Soc. Sec.*, No. 6:17-CV-6098 EAW, 2018 WL 4666068, at *4 (W.D.N.Y. Sept. 28, 2018) ("[A] medical opinion is not necessarily stale simply based on its age. A more dated opinion may constitute substantial evidence if it is consistent with the record as a whole notwithstanding its age.").

On April 7, 2017, Plaintiff underwent psychiatric evaluation conducted by Dr. Ippolito, who diagnosed her with persistent depressive disorder with anxious distress and rule out specific learning disorder. (Dkt. 9-7 at 77). Although Plaintiff complained about having depression, low energy, fatigue, short-term memory deficits, and anxiety that was triggered by large crowds of people, Dr. Ippolito opined that Plaintiff's psychiatric problems did not appear to be significant enough to interfere with her ability to function on a daily basis. (*Id*. at 75, 77). Despite her complaints, Plaintiff was alert and oriented, had appropriate eye contact, coherent and goal directed thought process with no evidence of hallucinations, delusions, or paranoia, as well as fair to good insight, and good judgment. (*Id*. at 76). As a result of the examination, Dr. Ippolito opined that Plaintiff was able to understand, remember, and apply complex directions and instructions, sustain concentration, and perform tasks at a consistent pace with mild limitations, and able to regulate emotion, control behavior, maintain well-being, and interact adequately with supervisors, coworkers, and the public with moderate limitations. (*Id*.). She also opined that Plaintiff would have no limitations in her ability to understand and apply simple directions and instructions, use reason and judgment to make work-related decisions, and

sustain an ordinary routine and regular attendance at work. (*Id.*). Dr. Ippolito noted Plaintiff's subjective statements that the psychotropic medications she was taking—lamotrigine and bupropion[2]—were not helpful in managing her mental health symptoms but recommended that Plaintiff continue taking them as prescribed and attend individual psychological therapy to assist with her mood management. (Dkt. 9-7 at 74, 77).

Plaintiff argues that the ALJ's reliance on Dr. Ippolito's opinion was improper because it predated the change of her psychotropic medication, which, she submits, suggested the worsening of her mental health symptoms. (Dkt. 10-1 at 12-13). The Court disagrees because the change or increase of medication does not necessarily deem a medical opinion stale particularly where, as here, the opinion is consistent with the record. *See Annette M. v. Comm'r of Soc. Sec.*, No. 19-CV-6845S, 2021 WL 248012, at *5 (W.D.N.Y. Jan. 26, 2021) (the consultative opinion was not stale because no evidence suggesting that plaintiff's condition worsened was presented even when plaintiff was prescribed additional medications to control her persistent symptoms); *Ruff v. Saul*, No. 3:19-CV-01515 (SRU), 2020 WL 6193892, at *11 (D. Conn. Oct. 22, 2020) ("Although there is some evidence that [plaintiff] did not always respond to the treatment, and her

[2] Lamotrigine, also known under brand name Lamictal, is used to prevent and control seizures, and may be used to prevent the extreme mood swings of bipolar disorder in adults. *Lamotrigine Tablet – Uses, Side Effects, and More*, WEBMD, https://www.webmd.com/drugs/2/drug-4582-7217/lamotrigine-oral/lamotrigine-oral/details/ (last visited Nov. 18, 2022). Bupropion, also known as Wellbutrin, is an antidepressant medication. National Alliance of Mental Illness (NAMI), *Bupropion*, https://www.nami.org/About-Mental-Illness/Treatments/Mental-Health-Medications/Types-of-Medication/Bupropion-(Wellbutrin) (last visited Nov. 18, 2022).

medications required adjustment, there is also substantial evidence in the record that supports the ALJ's determination.").

The record reveals that Plaintiff was first prescribed bupropion in September 2016 following her initial complaints of depression and anxiety, as well as attention deficit disorder ("ADD"), by her treating neuropsychologist Maurice Hourihane, M.D. (Dkt. 9-7 at 95-96). She took the medication until December 2016, when she stopped doing so because of a skin rash she had developed as a side effect of the medication. (*Id*. at 65, 88; Dkt. 9-9 at 111). A month later, Alfred Belen III, M.D. ("Dr. Belen") prescribed Lamictal to treat Plaintiff's anxiety and depression, which he believed to be situational. (Dkt. 9-7 at 91-92). She continued taking Lamictal throughout early 2017 and repeatedly complained about its effectiveness in improving her depression and anxiety symptoms. (*Id*. at 85-87). To answer Plaintiff's complaints, Dr. Belen and the other mental health providers at Dent Neurological Institute modified Plaintiff's medication from Lamictal to Trieptal.[3] (Dkt. 9-7 at 65, 67, 72; Dkt. 9-9 at 113). Despite the change of the medication, Plaintiff reported feeling "the same" and stated that she did not notice any improvement of her anxiety. (Dkt. 9-9 at 108). The dosage of Plaintiff's Trileptal was later increased, and she was also prescribed a low dose of Lexapro to control her depression and anxiety. (*Id*. at 110). Two months later, Plaintiff reported that she had stopped taking all her medications because "they were not working" (*id*. at 106); however, following her examination, Plaintiff was

---

[3] Trileptal is a brand name of an anti-seizure medication oxcarbazepine. National Library of Medicine, *Oxcarbazepine*, MEDLINEPLUS, https://medlineplus.gov/druginfo/meds/a601245.html (last visited Nov. 18, 2022).

prescribed Lamictal again, as well as Trintellix for her depression and anxiety (*id*. at 107). During Plaintiff's subsequent examinations, she indicated that the medications were not "helping much," but noted some improvement of her anxiety demonstrated by her ability to leave the house. (*Id*. at 99, 103). The dose of Lamictal was later increased while Trintellix was continued to be prescribed. (*Id*. at 99, 101-02, 104).

The ALJ acknowledged the change of Plaintiff's medications throughout her decision, and properly considered it as one of the factors to determine that, despite the medication adjustments and complaints of their ineffectiveness, Plaintiff's reports of disabling symptoms were not entirely consistent with the record. (Dkt. 9-2 at 23-25). Notably, the record demonstrates that Plaintiff complained about the ineffectiveness of her medications in lessening her depression and anxiety symptoms not only after Dr. Ippolito issued her opinion in April 2017, but also well before Dr. Ippolito's examination. In fact, Plaintiff reported no changes in her anxiety and depression symptoms shortly after she was first prescribed bupropion (Wellbutrin) in September 2016 and later admitted that her anxiety actually became worse since she started taking it. (Dkt. 9-7 at 67-68, 85, 92-93; Dkt. 9-8 at 26). This is important in light of Plaintiff's argument that the adjustment of her medication following Dr. Ippolito's examination was a sign of the deterioration of her mental health symptoms. Contrary to Plaintiff's argument, the record is clear that Plaintiff's treatment providers routinely changed her medications in an attempt to lessen her depression and anxiety during pendency of Plaintiff's claim, and they had done so both before and after Dr. Ippolito's examination. Therefore, the change in Plaintiff's medication was not a sign of the deterioration of her mental health symptoms following the

examination by Dr. Ippolito, but a sign of the continuous nature of her mental health impairments that the ALJ found to be severe, which her treatment providers were trying to manage. In other words, the marginal effectiveness of Plaintiff's medications in completely alleviating her symptoms before and after Dr. Ippolito rendered her opinion does not equate to the deterioration of Plaintiff's symptoms following Dr. Ippolito's examination and, as a result, does not make Dr. Ippolito's opinion stale. *See Schneider v. Comm'r of Soc. Sec.*, No. 19-CV-290S, 2020 WL 3096979, at *4 (W.D.N.Y. June 11, 2020) (the opinion of the consultative examiner was not stale when the record did not show a worsening of plaintiff's MS where his examinations were normal and consistent with "stable disease course"); *Silvestri v. Comm'r of Soc. Sec.*, No. 18-CV-357-FPG, 2020 WL 746589, at *3 (W.D.N.Y. Feb. 14, 2020) (no evidence that plaintiff's mental condition deteriorated to render the state agency medical consultant's opinion stale when the record was clear that plaintiff was consistently depressed and anxious throughout the pendency of her claim, and was hospitalized following a suicide attempt before and after the opinion was rendered).

Also, despite Plaintiff's allegations of the ineffectiveness of her medication to treat her depression and anxiety, her providers continued to prescribe the same course of treatment—psychotropic medication— during the relevant period without resorting to more invasive treatment options, such as an outpatient or an inpatient treatment. *See e.g.*, *Penfield v. Colvin*, 563 F. App'x 839, 840 (2d Cir. 2014) (claimant receiving only conservative treatment is evidence that can weigh against allegations of disabling symptoms); *Thomas v. Comm'r of Soc. Sec.*, 479 F. Supp. 3d 66, 89 (S.D.N.Y. 2020)

(courts "have specifically recognized that a pattern of conservative medical treatment, such as mental health treatment with medication and therapy but not in-patient or hospitalization care, is a proper factor for an ALJ to consider in evaluating a claimant's credibility." (internal citation and quotation marks omitted)); *Caron v. Colvin*, No. 8:12-CV-1824, 2014 WL 3107959, at *5 (N.D.N.Y. July 8, 2014), *aff'd*, 600 F. App'x 43 (2d Cir. 2015) (plaintiff's testimony that her anxiety had worsened was found non-credible when she had normal examinations and continued to be prescribed psychiatric medication despite claiming its ineffectiveness). Plaintiff was never hospitalized for her mental health impairments, continued to address them only through medication management, and declined to attend mental health counseling despite being repeatedly recommended to do so by her providers, all of which suggests that her mental limitations remained consistent and not work preclusive throughout the relevant period. (Dkt. 9-7 at 67, 72; Dkt. 9-9 at 99, 104, 106, 113); *see Whitehorne v. Comm' r of Soc. Sec.*, No. 19-CV-0256MWP, 2020 WL 5077025, at *6 (W.D.N.Y. Aug. 27, 2020) (no deterioration of plaintiff's mental health symptoms was found where the ALJ considered, among other evidence, plaintiff's management of her symptoms with medication without participating in any ongoing mental health counseling).

Additionally, the results of Plaintiff's mental health examinations support the finding that despite Plaintiff's complaints of debilitating depression and anxiety, she was clinically stable. *See Sandra W. v. Comm'r of Soc. Sec.*, No. 3:21-CV-599 (DJS), 2022 WL 1115404, at *4 (N.D.N.Y. Apr. 14, 2022) ("Evidence that medical records showed an individual to be clinically stable does not support a finding of deterioration." (internal

citation omitted)). Although Plaintiff complained about poor sleep, feelings of depression and hopelessness, mood swings, and difficulty concentrating, her providers repeatedly diagnosed her with moderate depression and anxiety. *See Matta v. Astrue*, 508 F. App'x 53, 55 (2d Cir. 2013) (moderate difficulties in concentration, persistence and pace, and moderate difficulties in social functioning were consistent with the finding that plaintiff was capable of simple, routine, low-stress, and unskilled work with no more than minimal contact with co-workers, supervisors, and the general public); *Whipple v. Astrue*, 479 F. App'x 367, 370 (2d Cir. 2012) (consultative examiner's findings that plaintiff was only mildly and moderately impaired by his depression and anxiety supported the ALJ's conclusions that he was capable of performing work that involved simple tasks in a low-stress environment).

Moreover, their findings repeatedly demonstrated that Plaintiff's symptoms were consistent throughout the relevant period as she had normal orientation, full and appropriate affect, linear and goal-oriented thought process, no paranoia or delusions, stable attention and concentration, clear and fluent speech, coherent and logic thought process, and normal mood, memory, and speech during her examinations. (Dkt. 9-7 at 67; Dkt. 9-8 at 21, 28, 46, 84; Dkt. 9-9 at 107, 109, 112). Plaintiff reported that she was able to follow her providers without any difficulties and admitted that she could carry out activities of daily living independently without any issues even when she saw treatment for allegedly worsening depression and anxiety. (*Id.*). Even when Plaintiff complained about the ineffectiveness of Wellbutrin, she appeared "substantially better," and reported

occasional bursts of energy despite the lack of sleep that she experienced at the time. (Dkt. 9-7 at 68).

Plaintiff's involvement in various activities during the relevant period also deserve attention. The record demonstrates that despite having a learning disability in high school, she received a high school diploma, and was a full-time student first at Erie Community College and then at Villa Maria College, where she was pursuing a Bachelor of Fine Arts degree in fashion design and merchandising. (Dkt. 9-2 at 37, 43; Dkt. 9-9 at 4-80, 88, 90). She did not receive any additional assistance in school, and most of her grades were A's and B's. (Dkt. 9-2 at 45; Dkt. 9-9 at 4). As part of her studies, Plaintiff traveled to Las Vegas to attend a fashion design convention with her class. (Dkt. 9-2 at 43). In addition to attending school, Plaintiff also worked two days a week for four to six hours a day as a cashier at Home Depot. (Dkt. 9-2 at 46). This, coupled with Plaintiff's college attendance during pendency of this action, were significant factors for the ALJ to consider when she analyzed the consistency of Plaintiff's allegations concerning the severity of her mental health symptoms with the record. *See Silva v. Saul*, No. 18-CV-6206 CJS, 2019 WL 2569595, at *5 (W.D.N.Y. June 21, 2019) ("An ALJ may . . . properly consider a claimant's demonstrated ability to work part-time during the relevant period as evidence that the claimant is not completely disabled.").

Therefore, instead of solely relying on Dr. Ippolito's opinion as Plaintiff suggests, the ALJ took into account the record as a whole and considered Plaintiff's ability to attend college, work part-time, take public transportation, travel by plane to another state, routinely interact with students in class, and socialize with friends to determine that she

was capable of performing simple routine tasks, make simple work-related decisions, maintain attention and concentration for 2-hour blocks of time, and occasionally interact with supervisors, coworkers, and the general public. *See, e.g.*, *Cook v. Comm'r*, 818 F. App'x 108, 109-10 (2d Cir. 2020) (the ALJ did not err when he limited plaintiff to simple routine work with limitations in interaction with the public based on the consultative opinion that plaintiff could perform simple tasks independently and relate adequately with others); *Annette M. v. Comm'r of Soc. Sec.*, No. 19-CV-6845S, 2021 WL 248012, at *5 (W.D.N.Y. Jan. 26, 2021) (evidence of plaintiff working 36 hours per week as a cashier and continuing to engage in significant activities of daily life did not support her argument that her condition deteriorated to make the opinion of consultative examiner stale); *Cerio v. Colvin*, No. 5:14-CV-875 (DJS), 2015 WL 6454751, at *9 (N.D.N.Y. Oct. 26, 2015) (the ALJ properly credited the opinion of the consultative examiner that plaintiff could perform simple and unskilled tasks when plaintiff was engaged in various activities, including college attendance).

In sum, Plaintiff's challenge amounts to a disagreement with the ALJ's findings. While she may disagree with the ALJ's conclusions, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, 721 F. App'x 25, 29 (2d Cir. 2018) (internal citations and quotations omitted); *see also Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." (internal

quotation marks omitted)). It is ultimately Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018). Plaintiff presented no medical evidence of functional limitations greater than those found by the ALJ. For the reasons discussed above, the ALJ reasonably concluded that Plaintiff failed to meet her burden of a more restrictive RFC. As a result, the RFC determination is supported by substantial evidence. Accordingly, there is no basis for the Court to disturb the Commissioner's determination.

**CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 12) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 10) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: December 9, 2022
Rochester, New York